# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 14-3251

———————————————

Thomas J. Heckman,

*Appellant*,

v.

Commissioner of Internal Revenue,

*Appellee*.

——————————

Appeal From The United States Tax Court

——————————

Submitted: April 13, 2015
Filed: June 10, 2015

——————————

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

This appeal involves a tax dispute that turns on the applicable statute of limitations. Thomas Heckman did not report certain gross income on a tax return for 2003 that he filed in August 2004. The Internal Revenue Service issued Heckman a notice of deficiency in July 2010. Heckman petitioned the tax court, arguing that the deficiency notice was untimely, because the statute of limitations expired three years after the filing of his return. The tax court determined that a six-year statute of

limitations applied, and that the notice was therefore timely. The tax court held Heckman liable for a deficiency of $38,623 for tax year 2003, and Heckman appeals.

Heckman participated in an employee stock ownership plan established by his company, KC Investment Management, in 2001. In 2003, the plan acquired a 100% interest in Prairie Capital, LLC, and then distributed its interest in Prairie Capital to Heckman's individual retirement account. The plan distribution was worth $137,726.

Heckman filed his 2003 Form 1040 tax return, along with accompanying schedules, in August 2004. On the return, Heckman omitted the plan distribution from his gross income. Heckman also did not disclose the distribution or his interest in Prairie Capital on his individual return. For tax year 2003, Prairie Capital filed a Form SS-4 application for an Employer Identification Number and a Form 1065 information tax return. The forms identified Heckman and Heckman's individual retirement account, respectively, as members of Prairie Capital.

The IRS learned of the plan distribution through oral and written statements that Heckman provided during an unrelated audit in April 2007. In July 2010, more than three years but fewer than six years after Heckman filed his 2003 return, the IRS issued Heckman a notice of deficiency for tax year 2003. The parties now agree that the employee stock ownership plan was not eligible for favorable tax treatment under 26 U.S.C. § 401(a), and that the distribution constituted taxable income to Heckman in 2003.

In the tax court, Heckman argued that the notice of deficiency was untimely under the three-year statute of limitations of 26 U.S.C. § 6501(a) (2000). The tax

court applied the six-year limitations period prescribed by § 6501(e)(1)(A) and ruled that the notice was timely.[*]

Under 26 U.S.C. § 6501(a) (2000), the IRS must assess a tax deficiency within three years after the relevant tax return was filed. Section 6501(e)(1)(A) extends the limitations period to six years if the taxpayer "omits from gross income" an amount in excess of twenty-five percent of the gross income stated on the return. The parties stipulate that the plan distribution exceeded twenty-five percent of Heckman's gross income for 2003. An amount is not considered "omitted" from gross income, however, if it is "disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." § 6501(e)(1)(A)(ii). We review the tax court's interpretation of § 6501 *de novo*, and its factual findings for clear error. *Scherbart v. Comm'r*, 453 F.3d 987, 989 (8th Cir. 2006).

Heckman first argues that § 6501(e)(1)(A)'s six-year limitations period does not apply because the IRS gained actual knowledge of the distribution—during the unrelated audit—within three years of the date when he filed his 2003 tax return. This argument is premised on language in *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), which construed § 275(c) of the Internal Revenue Code of 1939. Section 275(c) provided for an extended statute of limitations (five years rather than three) when a taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return."

---

[*]Section 6501(e)(1)(A) was later redesignated as § 6501(e)(1)(B), Pub. L. 111-147, Title V, § 513(a) (2010), but we refer to the Code in effect when Heckman filed the return at issue.

*Colony* held that when an understatement of tax arose from an error in reporting an item disclosed on the face of the return, the five-year limitations period did not apply. The Court reasoned that "in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors." 357 U.S. at 36. Heckman contends that the IRS in this case was not "at a special disadvantage" in detecting his error within the ordinary three-year limitations period, because the government obtained actual knowledge of the distribution before the three-year period expired. On that basis, Heckman contends that Congress did not intend to give the Commissioner six years to investigate his return, and that the longer limitations period does not apply.

The short answer to Heckman's contention is that *Colony* construed a different statute that was superseded by § 6501(e)(1)(A). Like the 1939 Code, the successor statute provides for an extended statute of limitations when a taxpayer omits an amount from gross income that exceeds 25 percent of the reported gross income. But unlike the 1939 Code, § 6501(e)(1)(A) spells out precisely what amounts should be taken into account in determining the amount omitted from gross income. Subsection (ii) provides that an amount is excluded in determining "the amount omitted from gross income" only if the amount "is disclosed in the return, or in a statement attached to the return." § 6501(e)(1)(A)(ii). There is no provision that says an amount is excluded if the Commissioner is not "at a special disadvantage" in detecting the error, or if the Commissioner learns of the amount within the ordinary three-year limitations period. *Colony*, moreover, concerned an amount that *was* disclosed on the face of the taxpayer's return, *id*. at 36, so the Court unsurprisingly viewed its decision as "in harmony" with the later enacted § 6501(e)(1)(A). *Id*. at 37 & n.3.

Heckman's proposed interpretation of § 6501(e)(1)(A) cannot be reconciled with the text and structure of the statute. The statute of limitations runs from the date

-4-

when the taxpayer's "return was filed," § 6501(a), (e)(1)(A), thus allowing the Commissioner either three years or six years to investigate a return, depending on which limitations period applies. Under Heckman's approach, however, if the Commissioner gains actual knowledge about an amount omitted from a return at some date after the return is filed (say, two years and 364 days later), then the Commissioner would be left with only the remaining time (e.g., one day) to investigate and act on the omission, not the three years contemplated by the statute. It is no answer to say, as Heckman does in the alternative, that the Commissioner could simply be granted another three years after the date when the government acquires actual knowledge of the omission. The Code provides only two statutes of limitations: three years or six years *after the return was filed*, not three years after the acquisition of actual knowledge.

Heckman argues alternatively that his distribution from the plan was "disclosed in the return," as contemplated by § 6501(e)(1)(A)(ii), because it was allegedly disclosed in Prairie Capital's 2003 tax filings. He relies on *Benderoff v. United States*, 398 F.2d 132 (8th Cir. 1968), which considered both taxpayers' individual returns and an information return filed by a corporation in determining whether a corporate distribution to the taxpayers was "disclosed in the return . . . in a manner adequate to apprise the Secretary . . . of the nature and amount of such item." *Id.* at 134-35 (internal quotation mark omitted). In *Benderoff*, the taxpayers disclosed their status as shareholders of the corporation and reported their respective shares of undistributed corporate income on their individual tax returns, but failed to include a corporate distribution that they received. *Id.* at 135. This court reasoned that the corporate information return should be considered along with the individual returns in analyzing the statute of limitations, because the purpose of the corporate information return was to allow the government to verify the accuracy of the shareholders' individual returns, and because the individual returns made "adequate reference to the corporate information return." *Id*.

In contrast to the situation in *Benderoff*, Heckman's return contained no reference to Prairie Capital or to the distribution. Neither Heckman's return nor any attached statement gave the Commissioner a clue that Prairie Capital's filings were relevant to Heckman's tax liability. Because Heckman's individual return made no reference to Prairie Capital's filings, the latter are not considered in determining whether Heckman's return disclosed the distribution in a manner "adequate to apprise" the Commissioner of the amount omitted from Heckman's return. *See Taylor v. United States*, 417 F.2d 991, 994 (5th Cir. 1969) ("Since the Government in this case examined an individual income tax return giving no suggestion or inference that relevant information may have been contained elsewhere, it cannot be seriously contended that the 'adequate disclosure' referred to in section 6501(e)(1)(A)(ii) was made."); *Connell Bus. Co. v. Comm'r*, 87 T.C.M. (CCH) 1384, 1387 (T.C. 2004).

Heckman also points to Revenue Ruling 55-415, 1955-1 C.B. 412 (1955), which said that "[a]ny partner's share of the gross income reported in the partnership information return should be considered as having been returned by the taxpayer, as such information return is a return by or on behalf of each partner." *Id.* at 413. Although Prairie Capital is a limited liability company, it is treated as a partnership for federal income tax purposes, and it filed a Form 1065 partnership tax return for 2003. Heckman contends that the 1955 revenue ruling means that Prairie Capital's 2003 tax return is a return by or on behalf of Heckman, so that income disclosed on the Prairie Capital return was not "omitted" from his gross income. The revenue ruling, however, interpreted the 1939 Code. It did not address whether income disclosed in a partnership return is disclosed "in the return" or "in a statement attached to the return" for purposes of the later-enacted § 6501(e)(1)(A)(ii), where "the return" refers to the return filed by the individual taxpayer. In any event, as the tax court observed, no return filed by Prairie Capital for the 2003 tax year disclosed the distribution from the employee stock ownership plan to Heckman's individual retirement account.

Heckman's last contention is that because he reasonably believed in 2003 that the plan distribution qualified for a tax-free rollover and was not gross income, the amount should not be treated as "omitted" from his 2003 return for purposes of determining the statute of limitations. It is now undisputed, however, that the distribution was taxable income and that Heckman's belief when he filed his return was incorrect. Section 6501(e)(1)(A) creates no exception for omissions caused by a taxpayer's mistaken tax position. *See Benson v. Comm'r*, 560 F.3d 1133, 1136 (9th Cir. 2009).

The tax court correctly concluded that the distribution that Heckman received from his employee stock ownership plan was an "amount omitted from gross income" that triggered the extended six-year statute of limitations under § 6501(e)(1)(A). The judgment of the tax court is therefore affirmed.

———————————————————